STATE OF NORTH CAROLINA v. KENNETH MICHAEL BADGETT

No. 8617SC194

(Filed 5 August 1986)

**Arrest and Bail § 3.2— check on motorist's limited driving privilege—propriety of arrest**

> An officer was justified in approaching defendant where he merely approached a motorist and asked to see a valid license and N. C. permit; the actions took place in public, no extraneous questions were asked, and no "search" occurred; and the officer had specific knowledge that defendant's license had been revoked and that defendant held a limited driving privilege which he may have violated by driving for a social purpose. Furthermore, the officer had probable cause to arrest defendant after detecting the odor of alcohol on his breath and noting the restriction on his limited driving privilege, and the trial court therefore did not err in refusing to suppress the evidence of alcohol on defendant's breath, the results of breath analysis, and evidence that defendant held a limited driving privilege.

APPEAL by defendant from *Wood, Judge.* Judgment entered 11 December 1985 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 10 June 1986.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Isaac T. Avery III, for the State.*

*Harrison, Benson, Worth, Fish & Hall, by A. Wayne Harrison, for defendant appellant.*

BECTON, Judge.

Defendant, Kenneth Michael Badgett, pleaded guilty to driving while his license was revoked or suspended, reserving his right to appeal the trial court's refusal to suppress certain evidence. We affirm the trial court.

The only issue on appeal is whether the trial court erred in refusing to suppress: evidence of alcohol on defendant's breath, the results of a breath analysis, and the fact that defendant held a limited driving privilege.

On 8 August 1985, at 6:20 p.m., Patrolman K. D. Hanks saw defendant driving a car in a residential area. The officer recalled having seen defendant at the police station; he knew defendant's driver's license had been revoked and he had been issued a limit-

ed driving privilege. The officer also knew limited driving privileges are often issued with the condition that the driver not operate a vehicle with the odor of alcohol on his or her breath. Other conditions placed on limited driving privileges include restrictions on the time, route and purpose of operation of the vehicle, and limited driving privileges never allow the holder to drive for social visits. The officer followed defendant for a few blocks and saw him stop in front of a residence, exit his car, and wave to people off the street. The officer then approached defendant on foot and noticed the odor of alcohol on defendant's breath.

The officer asked to see defendant's license. Defendant produced a Virginia license, which the officer checked and found to be valid. The officer then asked defendant if he had a limited driving permit, which defendant retrieved from a box in the trunk of his car. The officer noted that defendant's permit provided he could not operate a vehicle on public highways with the odor of alcohol on his breath. After reading this restriction, the officer arrested defendant for violating his limited driving privilege. At the police station, defendant submitted to a chemical analysis of his breath, which showed an alcohol concentration of 0.02 at 7:04 p.m. and 0.01 at 7:10 p.m.

It is not seriously contested that once the officer smelled alcohol on defendant's breath, knowing defendant held only a limited driving privilege, the officer had reasonable and articulable suspicion sufficient to permit the officer to ask defendant to produce his North Carolina permit. And the restriction on the permit, combined with the officer's observation, clearly gave the officer probable cause to arrest defendant. The issue, then, is whether the officer violated defendant's right to be free of unreasonable searches and seizures by first approaching him on a public street knowing only that defendant held some sort of limited driving privilege.

It is difficult to ascertain precisely when a "seizure" occurred in this case so as to implicate Fourth Amendment protection. " 'No one is protected by the Constitution against the mere approach of police officers in a public place.' *United States v. Hill*, 340 F. Supp. 344 (E.D. Pa. 1972)." *State v. Streeter*, 283 N.C. 203, 208, 195 S.E. 2d 502, 506 (1973). Assuming, without deciding, that a seizure occurred, we must determine whether the officer's deci-

sion to approach the defendant was "justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *State v. Thompson*, 296 N.C. 703, 706, 252 S.E. 2d 776, 778-79 (quoting *Terry v. Ohio*, 392 U.S. 1, 20, 20 L.Ed. 2d 889, 905, 88 S.Ct. 1868, 1879 (1968) ), *cert. denied*, 444 U.S. 907, 62 L.Ed. 2d 143, 100 S.Ct. 220 (1979).

Defendant contends that because he was driving in conformance with traffic laws during "standard working hours," there was no reason for the officer to suspect that defendant was violating his limited driving privilege. Although it is true that N.C. Gen. Stat. Sec. 20-179.3 (1983 & 1985 Cum. Supp.) authorizes a court to allow driving for work-related and other purposes during "standard working hours" (from 6:00 a.m. to 8:00 p.m., Monday-Friday, G.S. Sec. 20-179.3(f1) ), this decision is in the court's discretion. The court's discretion is limited only to the extent that driving for emergency medical care must be permitted if the limited driving privilege is granted, G.S. Sec. 20-179.3(f), and driving essential to the completion of any court-ordered community work assignments, course of instruction, or treatment program must be allowed, G.S. Sec. 20-179.3(g2). All driving must be limited to one of six "essential purposes." Moreover, additional restrictions on time, route and purpose may be imposed in the court's discretion.

The officer saw defendant driving in a residential area, apparently on a social visit. Although the officer did not know the precise restrictions on defendant's permit, he knew that restrictions vary from permit to permit and often limit driving hours, routes and purposes. Even though defendant was driving during statutory "standard working hours," this did not necessarily mean defendant was within his particular time, route and purpose restrictions. Furthermore, driving for social purposes is never permitted under the statute.

We believe the officer was justified in approaching defendant on these facts. First, the interference with defendant was minimal. The officer merely approached a motorist and asked to see a valid license and North Carolina permit. The actions took place in public, no extraneous questions were asked, and no "search" occurred. Second, the officer's actions were not random; he had specific knowledge that defendant's license had been revoked,

that defendant held a limited driving privilege, and that he might have been violating his privilege by driving for a social purpose. *Cf. Delaware v. Prouse*, 440 U.S. 648, 59 L.Ed. 2d 660, 99 S.Ct. 1391 (1979) (prohibiting random stops to check license and registration without reasonable or articulable suspicion that driver is unlicensed, vehicle is not registered, or vehicle or driver is otherwise in violation of law). Considering the scope of the intrusion, we conclude that the officer had a reasonable or founded suspicion based on articulable facts sufficient to justify his approach of defendant in a public place. Therefore, we need not consider whether fewer facts would suffice to justify this stop or, indeed, whether approaching this defendant constituted a Fourth Amendment "stop" or "seizure" in the first place.

The officer acted properly in approaching defendant and, after detecting the odor of alcohol on defendant's breath and noting the restriction on his limited driving privilege, had probable cause to make the arrest. Therefore, the trial court was correct in refusing to suppress the evidence in this case.

For the reasons set forth above, we

Affirm.

Judges JOHNSON and COZORT concur.